**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **1500 MINERAL SPRING ASSOCIATES, LP, ET. AL,** **Appellants,** | |
| | **C.A. No. 04-496T** |
| **vs.** | **C.A. No. 05-09T** |
| | **C.A. No. 05-10T** |
| **LOUIS A. GENCARELLI, SR.,** **Appellee.** | **(Consolidated)** |

ON APPEAL FROM ORDERS AND JUDGMENTS OF THE
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
BK. No. 04-10682

REPLY BRIEF OF PLAINTIFFS-APPELLANTS
1500 MINERAL SPRING ASSOCIATES, LP and
1800 SMITH STREET ASSOCIATES, LP

Robert D. Wieck, Esq. (#1739)
Attorney Denean M. Russo (#5043)
Counsel for Plaintiffs-Appellants
MacADAMS & WIECK INCORPORATED
101 Dyer Street, Suite 400
Providence, RI 02903
Telephone (401) 454-8700
Fax (401) 454-8755

Date: November 28, 2005

# TABLE OF CONTENTS

PAGE


TABLE OF AUTHORITIES.....iii

I. INTRODUCTION.....1

II. ARGUMENTS IN REPLY.....1

A. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING THE CREDITORS' MOTION TO DISMISS GENCARELLI'S INDIVIDUAL CHAPTER 11 PETITION FOR LACK OF GOOD FAITH.....1

1. First and foremost, Gencarelli failed to even mention, much less rebut, the analysis of the highly relevant, pivotal cases cited by the Creditors on this bad faith issue.....1
2. Gencarelli's so-called procedural arguments are without merit.....2
3. Gencarelli's asserted reasons or factors for filing his individual bankruptcy petition must be rejected *ab initio* by this Court.....4
4. Even assuming, *arguendo*, Gencarelli's listed factors were considered by the Bankruptcy Court, Gencarelli failed to how filing for bankruptcy was the best alternative.....4
5. The dismissal of Gencarelli's bankruptcy petition for bad faith under 11 U.S.C. §1112(b) will not have the effect of completely unwinding/undoing everything that has occurred in the bankruptcy proceeding.....6

B. THE BANKRUPTCY COURT ERRED IN CALCULATING THE AMOUNT OF THE CAP.....7

III. CONCLUSION.....11

# TABLE OF AUTHORITIES


CASES PAGE

*In re Day*, 292 B.R. 133 (Bankr.N.D.Texas 2003)....7

*In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3rd Cir. 2004).... 1, 3, 5

*In re Liberate Technologies*, 314 B.R. 206 (Bankr.N.D.Cal. 2004)....1, 4, 5

*In the Matter of Depew*, 115 B.R. 965 (Bankr.N.D.Ind. 1989)....7

*In re Searles*, 70 B.R. 266 (D.R.I. 1987)....7

*In re SGL Carbon Corporation*, 200 F.3d 154 (3rd Cir. 1999)....3

*Lott v. Chaffee*, 46 R.I. 242 (1924)....10

*Smith v. Hunt*, 32 R.I. 326 (1911)....10

STATUTES AND RULES

11 U.S.C §349(b)....6-7

11 U.S.C. §363....4, 7

11 U.S.C. §363(f)....4

11 U.S.C. §365(f)....7

11 U.S.C. §502(b)(6)....2, 8, 9

11 U.S.C. §502(b)(6)(A)....10

11 U.S.C. §502(b)(6)(A)(ii)....7, 10

11 U.S.C. §726....7

11 U.S.C. §1112(b)....6

## I. INTRODUCTION

Appellants, 1800 Smith Street Associates, LP ("Smith Street") and 1500 Mineral Spring Associates, LP ("Mineral Spring"), by and through their General Partner, Jason's Realty Corp. (collectively, the "Creditors"), submit this reply brief in response to the arguments made by Appellee Louis A. Gencarelli, Sr. ("Gencarelli") in his "responsive" brief dated November 16, 2005 ("Gencarelli's Brief"),[1] and in further support of their three (3) bankruptcy appeals (C.A. Nos. 04-496T, 05-09T and 05-10T).[2]

## II. ARGUMENTS IN REPLY

### A. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN DENYING THE CREDITORS' MOTION TO DISMISS GENCARELLI'S INDIVIDUAL CHAPTER 11 PETITION FOR LACK OF GOOD FAITH

#### 1. First and foremost, Gencarelli failed to even mention, much less rebut, the analysis of the highly relevant, pivotal cases cited by the Creditors on this bad faith issue.

In their Initial Brief, the Creditors provided a detailed analysis of several precedential cases with facts similar to the within matter. *See* Creditors' Initial Brief at pp. 14-24. Nevertheless, Gencarelli chose to ignore the Creditors' analysis. In particular, Gencarelli failed to even mention the two most recent cases which are the most analogous to the circumstances of the present matter, namely *In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3rd Cir. 2004) and *In re Liberate Technologies*, 314 B.R. 206 (Bankr.N.D.Cal. 2004). It would seem inconceivable that Gencarelli would address the bad faith filing issue without

---

[1] Referring to the Gencarelli Brief as a responsive brief is a misnomer. As noted below, Gencarelli' Brief did not respond to or address any of the specific arguments made by the Appellants/Creditors in their initial opening brief filed with this Court on October 13, 2005 ("Creditors' Initial Brief"), but rather was written in the form of an opening brief.

[2] All capitalized terms herein shall have the same meaning as defined in the Creditors' Initial Brief.

even mentioning these two cases. Gencarelli's Brief is an excellent example of the old adage: "If you cannot distinguish your case from the precedent, then ignore the precedent." Gencarelli's failure to rebut the Creditors' influential cases can only be construed as an implicit admission that those cases are controlling.

2. Gencarelli's so-called procedural arguments are without merit.

Gencarelli alleged that the Creditors "sat on their hands" by not objecting to any aspect of the sale of Bess Eaton and the Commercial Property, and belatedly filed their Motion to Dismiss on November 2, 2004. Gencarelli argued that because the Creditors did not assert the issue of a bad faith filing until after Gencarelli filed and the Bankruptcy Court heard his Cap Motion, the Creditor's Motion to Dismiss was not *bona fide* but rather an attempt to "revisit" the grant of the Cap Motion. *See* Gencarelli's Brief at pp. 24-26. In making this argument, Gencarelli has conveniently forgotten that from the very beginning of the filing of the bankruptcy cases in March of 2004, Bess Eaton and Gencarelli consistently advised the Bankruptcy Court and all of their respective creditors that **all of the claims** of the creditors would be **paid in full** from the sale proceeds. *See, e.g.,* Gencarelli's Exhibit No. 2. Thus, the Creditors had no reason to believe that they would be the exception to that rule and had no reason to pose an objection to the sale via a bankruptcy proceeding. It was only after Gencarelli filed the Cap Motion on August 12, 2004 that the Creditors first received notice that their claims may not be paid in full. Thereafter, in connection with researching the §502(b)(6) cap issue, the Creditors discovered and subsequently raised the bad faith filing issue. Prior to the Cap Motion, the Creditors had no reason to challenge any aspect of the sale or to challenge Gencarelli's bankruptcy filing on the ground of bad faith in light of the consistent representation that all creditors would be paid in full.

Second, Gencarelli placed significant emphasis on his argument that in order for the Creditors to prevail on their Motion to Dismiss, the Creditors had the burden to show that Gencarelli filed his bankruptcy petition in bad faith. Gencarelli argued that by going forward with the hearing on November 3, 2004 without presenting any additional evidence, the Creditors waived their right to an evidentiary hearing on the Motion to Dismiss and are "effectively foreclosed or precluded from pursuing any claim of error on appeal." *See* Gencarelli's Brief at pp. 7, 10-11 & 30. Quite simply, Gencarelli's emphasis is misplaced in that his argument is erroneous. Despite Gencarelli's assertion, it is not the Creditors who have the burden of proof on this issue. Gencarelli completely ignored the case law cited in the Creditors' Initial Brief at p. 15 which explicitly explains that it is Gencarelli who bears the burden of establishing that he needed Chapter 11 relief and that his voluntary petition was filed in good faith. *See In re Integrated Telecom Express,* 384 F.3d at 118 (citing *In re SGL Carbon Corporation*, 200 F.3d 154, 162 note 10 (3rd Cir. 1999) (**Once the issue is raised, "the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in 'good faith.'"** (emphasis added)). In their Memorandum in Support of Motion to Dismiss and at the November 3rd hearing, the Creditors directed the Court's attention to sufficient evidence to, at a minimum, raise the issue of Gencarelli's bad faith bankruptcy filing. *See* Creditors' Exhibits 21 & 22. The Creditors did not need further evidence. It was then up to Gencarelli to present sufficient evidence to establish that his voluntary petition was filed in good faith. It was Gencarelli who elected to go forward at the November 3rd hearing, and it was Gencarelli who failed to present any such evidence and failed to request a continuance of the hearing in order for him to do so. Consequently, the Motion to Dismiss

should have been granted based upon the record before the Bankruptcy Court at that time. *See* Creditors' detailed argument on this issue in their Initial Brief at pp. 14-24.

3. Gencarelli's asserted reasons or factors for filing his individual bankruptcy petition must be rejected *ab initio* by this Court.

In Gencarelli's Brief, he listed several reasons which purportedly justified his individual bankruptcy filing, and baldly asserted that these reasons/factors were considered by and were a matter of record before the Bankruptcy Court in making its determination to deny the Creditors' Motion to Dismiss. *See* Gencarelli's Brief at pp. 4 & 26-28. However, there are no citations to the record in Gencarelli's Brief to show where and when such alleged information was presented to Judge Votolato. Furthermore, there is no written decision by the Bankruptcy Court which explains what reasons/factors it considered or based its ruling upon. Consequently, Gencarelli's unsupported assertions may not be considered at all by this Court and must be rejected outright as pure speculation.

4. Even assuming, *arguendo*, Gencarelli's listed factors were considered by the Bankruptcy Court, Gencarelli failed to how filing for bankruptcy was the best alternative.

As expressed by the bankruptcy court in *Liberate Technologies*:

> Debtor's desire to conduct a sale of its assets under 363(f) establishes a need for bankruptcy relief **only if** a sale under section 363(f) is necessary to avoid a wasteful liquidation of business assets. There is no evidence that Congress determined that the procedures available under state law for selling a business are inadequate generally, and that *all* businesses should have access to the procedural advantages of §363. **A company that is able to sell its business as a going concern outside of bankruptcy and can clearly pay all creditors in full does not have a need for bankruptcy relief merely because it might be able to sell on better terms if it could use section 363(f) to sell the business free and clear of liens and claims.**

*Id.*, 314 B.R. at 217 (emphasis added). Furthermore, in *Integrated Telecom Express* the Third Circuit Court of Appeals recently stated:

> To be filed in good faith, a petition must do more than merely invoke some distributional mechanism in the Bankruptcy Code. It must seek **to create or preserve some value that would otherwise be lost** – not merely distributed to a different stakeholder – **outside of bankruptcy**.

*Id.*, 384 F.3d at 129 (emphasis added).

Here, Gencarelli failed to provide any explanation whatsoever as to how or why the bankruptcy proceeding, as opposed to an outside proceeding such as a state receivership, created or preserved value to the Debtors' estate that would have otherwise been lost. Instead, Gencarelli continued to focus solely on the successful results achieved in the Bankruptcy Court. However, based upon *Integrated* and *Liberate*, *supra*, he is required to establish that filing for bankruptcy relief was the only way in which the Debtors could have gotten those results. Gencarelli presented no evidence whatsoever to show that the same successful results could not have been achieved outside of a bankruptcy proceeding. It cannot be disputed that the Debtors had plenty of assets with a significant value. There was nothing presented by Gencarelli to suggest that, for example, the bidding war between Tim Horton's and Dunkin Donuts which drove up the selling price for Bess Eaton could not have occurred outside of the bankruptcy setting. Consequently, Gencarelli failed to meet his burden to establish that his voluntary petition was filed in good faith, and as a result, the Bankruptcy Court abused its discretion in failing to dismiss this matter.

5. <u>The dismissal of Gencarelli's bankruptcy petition for bad faith under 11 U.S.C. §1112(b) will not have the effect of completely unwinding /undoing everything that has occurred in the bankruptcy proceeding</u>.

The effect of a dismissal of Gencarelli's Chapter 11 bankruptcy case under 11 U.S.C §1112(b) is governed by 11 U.S.C §349(b). Section 349 states, in pertinent part:

> (b) **Unless the court, for cause, orders otherwise**, a dismissal of a case...
>
> (1) reinstates -
> (A) any proceeding or custodianship superseded under section 543 of this title;
> (B) any transfer avoided...; and
> (C) any lien voided under section 506(d) of this title;
>
> (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title. (Emphasis added.)

The legislative history behind §349(b) indicates that Congress did not intend for dismissal to completely unwind/undo everything that had occurred in the bankruptcy case prior to dismissal. In discussing subsection (b), the legislative committee explains that the "for cause" provision in the statute gives the court permission to undo the bankruptcy case only "as far as practicable."

> The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case. **This does not necessarily encompass undoing sales of property from the estate to a good faith purchaser. Where there is a question over the scope of the subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.**

Senate Report No. 989, 95th Congress, 2nd Session (emphasis added). "Thus, Congress recognized that, at least in some situations, it would not be possible or practicable to completely unwind the entire bankruptcy case and that there might be some effects which

could not be reversed." *In the Matter of Depew*, 115 B.R. 965, 970 (Bankr.N.D.Ind. 1989). Furthermore, as stated by the court in *Depew*, it is significant that "§349(b) does not mention or seek to reverse transfers *out* of the bankruptcy estate, such as those which might be made pursuant to §363, §365(f) or §726. This would seem to indicate that §349(b) was designed to deal only with the property that was still part of the estate on the date of the dismissal. It does not attempt to deal with property which had already legitimately passed out of the bankruptcy estate." *Id.*, 155 B.R. at 971. Consequently, several courts, **including this particular Court**, have determined that §349(b) operates only as to the property of the estate left in the estate on the date of dismissal. *See id.*, 155 B.R. at 971-972 and *In re Day*, 292 B.R. 133, 136-137 (Bankr.N.D.Texas 2003) (both citing *In re Searles*, 70 B.R. 266, 270 (D.R.I. 1987). Accordingly, a dismissal of Gencarelli's individual bankruptcy petition for bad faith at this point in time would only affect the property currently held by Gencarelli's estate, *i.e.* the funds previously distributed to him and the funds remaining from the sale of the subject assets held in the escrow account. Under §349(b), those funds would be revested in Gencarelli and the Creditors could pursue their state court judgments against Gencarelli as if the bankruptcy case had never been filed.

B. THE BANKRUPTCY COURT ERRED IN CALCULATING THE AMOUNT OF THE CAP

Gencarelli argued that on April 19, 2000, the Creditors both "repossessed" the Properties and accepted Gencarelli's "surrender" of the Properties. *See* Gencarelli's Brief at pp. 18-19. Gencarelli led the Bankruptcy Court into error and invited this Court to make the same error by arguing that the provisions of 11 U.S.C. §502(b)(6)(A)(ii) refer to physical repossession/acceptance of the Properties by the Creditors, as opposed to a legal repossession

and acceptance of surrender. In support of his argument, Gencarelli **erroneously** asserted that the intent or rationale behind the §502(b)(6) cap "is that a landlord has the ability to cover its damages once it gets its property back." *See* Gencarelli's Brief at p. 19. Gencarelli's assertion vis-à-vis the §502(b)(6) cap requires this Court to find that the §502(b)(6) cap effectuated a pre-petition substantive change in Rhode Island landlord-tenant law.

As discussed in detail below, the terms of "repossession" and "acceptance of surrender" have very specific legal significance under Rhode Island landlord-tenant law. Specifically, Rhode Island law recognizes that even though a landlord has physical possession of the subject premises, *i.e.* the tenant no longer has the right of possession, the tenant nevertheless remains obligated for rent until the landlord has successfully re-let the subject premises to a new tenant, provided of course that the landlord has undertaken reasonable efforts to mitigate his/her/its damages. As discussed in detail below, under Rhode Island law, legal repossession and legal acceptance of surrender occur at the time of the successful re-letting, *i.e.* when the tenant's rental obligations come to an end.

Gencarelli convinced the Bankruptcy Court that the §502(b)(6) cap limits the rent payable to a landlord to the one year period following physical repossession by the landlord, notwithstanding the fact that the rental obligation would continue to occur until the subject premises were re-let, *i.e.* legal repossession.

There is no disagreement in the present case that the Creditors took physical possession of the Properties on April 19, 2000. In fact, Creditors' obligation to mitigate their damages, *i.e.* re-let the Properties, commenced on this date because a landlord's duty/ obligation to re-let only arises when the landlord can contractually deliver physical possession of the subject premises to a new tenant.

In the underlying state court litigation, Gencarelli was entitled to argue that in taking physical possession of the Properties the Creditors also had legally accepted possession, *i.e.* no further rent was due. Gencarelli elected not to raise this point in the state court litigation. Further, in the underlying state court litigation, Gencarelli was entitled to argue that the Creditors had failed to mitigate their damages, *i.e.* failed to use reasonable efforts to re-let the Properties. Gencarelli did raise this argument, however the state court was satisfied that the Creditors had used reasonable efforts to re-let the Properties and awarded Creditors a judgment for rent up to and including the date of the judgment.

Gencarelli convinced the Bankruptcy Court, and has attempted to convince this Court, that the §502(b)(6) cap terminates Gencarelli's obligation to pay rent as of April 19, 2001, even though: (a) his obligation to pay rent continued beyond this date under state law; and (b) he did not file his bankruptcy petition until March 3, 2004, *i.e.* almost three years after the alleged "stop date." The acceptance of Gencarelli's argument on this point requires this Court to construe the §502(b)(6) cap as "wiping out" or eliminating almost three years of pre-petition rent obligations that are due and owing under state law, *i.e.* a pre-petition substantive change under Rhode Island landlord-tenant law. As discussed in the Initial Brief, this argument has been rejected by every court that addressed it and should be rejected by this Court as well.

The real purpose of the §502(b)(6) cap is to place a limitation on a landlord's <u>post-petition</u>, future rent claim so as to afford some protection to other general unsecured creditors of the debtor. *See* discussion in Creditors' Initial Brief at pp. 29, 41-42. Furthermore, even though Gencarelli acknowledged that Rhode Island state law determines whether a legal repossession and an acceptance of a surrender has in fact occurred, his proposed interpretation

of subsection §502(b)(6)(A)(ii) completely ignored Rhode Island law and the Rhode Island cases discussing the issue of surrender and repossession. As discussed in the Creditors' Initial Brief, a "surrender" or "repossession" by operation of law under Rhode Island law **requires more than the mere physical transfer of possession** by the tenant. *See* discussion in Creditors' Initial Brief at pp. 36-37. There must also be an acceptance on the part of the landlord **whereby he gives up his right to the payment of future rent**. *Lott v. Chaffee*, 46 R.I. 242 (1924) and *Smith v. Hunt*, 32 R.I. 326 (1911) (where lessee abandoned property held under a written lease, with full knowledge that the lessor had no intention of releasing him from his lease obligations, there was no acceptance of the surrender by the landlord **even though the landlord resumed physical possession before the expiration of the lease term**) (emphasis added)). Thus, after a tenant's abandonment of his lease obligations, the landlord is allowed to re-enter the leased property in order to re-let and mitigate damages without legally surrendering his right to rent under the lease. *Id.*

Here, throughout the state court proceedings, the Creditors never conveyed by words or actions that they were giving up any of their rights under the subject Leases, particularly the right to the payment of future rent from Gencarelli. The Creditors merely re-entered the Properties in order to satisfy their duty to attempt to mitigate damages. Therefore, under Rhode Island case law, the Creditors never accepted a "surrender" or "repossession" of the Properties by operation of law. *See Lott* and *Smith*, both *supra*. Consequently, the Bankruptcy Court's §502(b)(6)(A) "cap" calculation was clearly erroneous and must be reversed.

## III. CONCLUSION

Based upon all of the reasons set forth in the Creditors' Initial Brief and above, the Creditors respectfully request that this Court remedy the several errors made by the Bankruptcy Court, as more fully discussed in the Creditors' Initial Brief.

Respectfully submitted,

1500 MINERAL SPRING ASSOCIATES, LP, and 1800 SMITH STREET ASSOCIATES, LP, by and through their General Partner JASON'S REALTY CORP.

By their Attorneys,

Robert D. Wieck, Esq. (#1739)
Attorney Denean M. Russo (#5043)
MacADAMS & WIECK INCORPORATED
101 Dyer Street, Suite 400
Providence, RI 02903
Telephone (401) 454-8700
Fax (401) 454-8755
Date: November 28, 2005

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of the within Appellants' Reply Brief was sent via first class mail, postage pre-paid, on this 28th day of November, 2005, to the following:

Joseph Ferrucci, Esq.
Christopher Mulhearn, Esq.
Ferrucci Russo P.C.
55 Pine Street
Providence, RI 02903

Leonard J. DePasquale, Esq.
Assistant United States Trustee
10 Dorrance Street
Suite 910
Providence, RI 02903

G:\Sisto, Bennie\Gencarelli, Louis A. Sr\BANKRUPTCY PLEADINGS\Appellants' Relpy Brief 1105.doc